```
                                                    USDC-SDNY
                                                    DOCUMENT
---------------------------------------------------X   ELECTRONICALLY FILED
                                                :      DOC #:_____
SANTIAGO GOMEZ, FRANK GENCO agent :             DATE FILED:  MAR 10 2015
of Frank Goldstein, GERALD CHARLES,  :
GERARD CHARLES, SHAWN THOMAS,        :
and JEFFREY DELOSSANTOS,             :
                                     :
                          Plaintiffs, :
                                     :
              -v-                    :         No. 12-CV-6869 (RA)
                                     :
WESTCHESTER COUNTY in its official and :        OPINION & ORDER
individual capacity, CORRECT CARE    :
SOLUTIONS LLC in its official and individual :
capacity, KEVIN M. CHEVERKO in his   :
official and individual capacity, DENTIST :
SKINNER in his official and individual :
capacity, DENTIST ZALESKY in his official :
and individual capacity, and NEW YORK :
CORRECT CARE SOLUTIONS MEDICAL       :
SERVS., P.C.,                        :
                                     :
                          Defendants. :
                                     :
---------------------------------------------------X
```

RONNIE ABRAMS, United States District Judge:

Plaintiffs, pre-trial detainees at Westchester County Jail, bring this action pursuant to 42 U.S.C. § 1983, asserting that Defendants Westchester County, the county corrections commissioner, and jail healthcare providers failed to provide adequate dental care and respond promptly to dental emergencies. Before the Court are motions to dismiss the Second Amended Complaint ("SAC") by Defendants Correct Care Solutions, LLC ("CCS"), New York Correct Care Solutions Medical Services, P.C. ("NYCCS"), Hamad Skinner, and Christina Zeleski[1] (collectively, "Correct Care Defendants") (Dkt. 123), and Defendants Commissioner Kevin Cheverko and Westchester County (together, "County Defendants") (Dkt. 129).

_____

[1] Defendant Zaleski is improperly pleaded as "Dentist Zalesky." The Clerk is respectfully directed to amend the caption to "Zeleski."

**BACKGROUND**

Plaintiffs Santiago Gomez, Frank Genco, Jeffrey DeLossantos, Shawn Thomas, Gerald Charles, and Gerard Charles allege that Defendants' failure to provide adequate and timely dental care resulted in the loss and destruction of their teeth, as well as severe pain that limited daily activities such as eating, talking, sleeping, and exercising.  (SAC ¶ 1.)[2]   Specifically, Plaintiffs allege that they suffered from cavities because they were denied dental floss (id. ¶¶ 68-69, 100-01, 110, 140, 142), and that Defendants delayed responses to "sick-call slips" and denied certain treatments in order to shift costs to the permanent correctional facilities where Plaintiffs would eventually reside (id. ¶ 144-45).  Although these violations were known to Defendant Commissioner Kevin Cheverko, Plaintiffs allege, no action was taken to correct them.  (Id. ¶¶ 146-147.)

**I.   Allegations Specific to Named Plaintiffs**

**A. Santiago Gomez**

Gomez, like the other Plaintiffs, blames Westchester County Jail's ("WCJ") refusal to provide dental floss for the numerous cavities he developed.  (Id. ¶¶ 68-69.)  On August 24, 2012, Gomez filed a grievance regarding the lack dental floss at the jail, advising WCJ of an alternative floss material called "Dental Loops" that was used in other correctional facilities.  (Id. ¶ 69; County Def. Ex. F.)   That grievance was denied.  (Id.)  Gomez also spoke to Defendant

---

[2] The allegations discussed herein are taken from the SAC.  As discussed further below, the allegations are assumed to be true for the purposes of Defendants' motions to dismiss, except with regard to the question of exhaustion of administrative remedies.

Zaleski, a CCS Dentist who worked at WCJ, about Dental Loops. She purportedly dismissed his suggestion, responding, "Sorry the County is cheap." (Id. ¶ 74.)[3]

Gomez further alleges that he was not provided adequate treatment for "severe dental pain" from the loss of a filling on the upper right side of his mouth in August 2012. (Id. ¶¶ 70, 85, 91-96.) Around the time he lost the filling, he saw Dr. Zeleski. She informed him that he needed a root canal and crown in order to save the tooth, but because the county would not pay for that procedure, an extraction was the best course of treatment for the pain. (Id. ¶ 71.) Gomez requested to be taken to an outside dental care provider instead, but his request was denied. (Id. ¶ 72.) Nonetheless, Gomez declined to have the tooth extracted and requested pain medication instead. (Id. ¶ 75.) Gomez did not file a grievance regarding this August incident.

On November 25, 2012, more than three months after the filling fell out, Gomez began experiencing sharp, throbbing pain on the right side of his mouth and complained to Correction Officer ("C.O.") Stasiak. (Id. ¶ 76.) Although Stasiak "promptly notified" the clinic sergeant that Gomez needed to be seen immediately and given pain medication, Gomez was not examined that night. (Id. ¶¶ 77-79.)[4] The next morning, Gomez informed C.O. Bourhill that he was awaiting care and still in severe pain. Bourhill called the clinic, but was purportedly told that the Dentist only saw inmates from Gomez's side of WCJ on Tuesdays. (Id. ¶¶ 83-84.)

---

[3] The County Defendants assert that WCJ began offering dental loops to inmates in October 2012 and that any claim for injunctive relief regarding the failure to provide dental floss is therefore moot. (County Def. Mem. at 7.) Although such a claim was indeed likely mooted by Defendants' decision to offer dental loops, see Amador v. Andrews, 655 F.3d 89, 99-100 (2d Cir. 2011), the SAC, unlike the original Complaint and FAC, does not contain a claim for injunctive relief. (See Dkt. 12, 28.)

[4] Gomez claims that he was denied treatment that night because he had previously filed a federal claim against Correct Care Services in Gomez v. Westchester County et al., 12 Civ. 4068 (PAE). (SAC ¶ 80.)

On November 26, 2012, Gomez complained to Stasiak a second time regarding his tooth pain, which was becoming more severe, and Stasiak alerted area supervisor Sergeant Brown. (Id. 88.)   Around that time, Gomez was seen by a CCS nurse practitioner.[5]   The nurse practitioner told him he was "ok" but that she would give Motrin for the pain and send him "urgently" to see the dentist.   (Id. ¶ 85.)   Gomez requested pain medication from the nurse practitioner, which he received at approximately 6:00 p.m. on November 26, 2012.   (Id. ¶¶ 85, 87.)

Because he had not yet seen a dentist regarding his November 25 and November 26 complaints, Gomez attempted to file a grievance with Sergeant Bell, but he purportedly refused it, saying "Sorry I'm to[o] busy to accept."   (Id. ¶ 86.)   Gomez also attempted to file his grievance with Sergeant Brown, but he allegedly refused to accept it as well.   (Id.)   Gomez then mailed the grievance to Warden Leandro Diaz on November 27, 2012, explaining that two officers had refused to accept it.   (Id. ¶ 89.)   On November 28, 2012, Sergeant Moore interviewed him regarding the grievance.   (Id. ¶ 90.)

The following day, November 29, 2012, Gomez awoke with his mouth full of fluid and blood.   He informed C.O. Perry of his condition, who reported it to Sergeant Bell and called the clinic.   (Id. ¶ 91.)   Approximately four hours later, Gomez was examined by Dr. Skinner, another CCS Dentist, who told him that he had an oral infection and needed antibiotics.   (Id. ¶¶ 92-93.) Dr. Skinner purportedly also said that Gomez should have been seen sooner.   (Id. ¶ 93.)

---

[5] The SAC does not provide an exact date for Gomez's examination by the nurse practitioner.  Based on the dates and times given for surrounding events, and the fact that Gomez alleges that he received pain medication on the evening of November 26, 2012, it appears that he saw the nurse practitioner earlier that day.  (See SAC ¶¶ 81-87.)

4

In December, Gomez began experiencing pain again. (Id. ¶ 94.) Dr. Skinner examined him and administered several shots of Novocain to treat the pain. (Id. ¶ 95.) At some point, Gomez agreed to have the tooth extracted. (Id.) Gomez alleges that the extraction would not have been necessary if he was provided with the procedures required to save the tooth earlier. (Id. 96-97.)

### B. Frank Genco

In addition to asserting that he received cavities because he was denied dental floss, Genco alleges that not flossing caused his gums to bleed. (Id. ¶¶ 100-101.) He further claims that he experienced "severe pain" related to a cracked tooth and other cavities, and that he was denied a crown and root canal procedure to save the tooth. (Id. ¶ 100.) Genco refused the treatments WCJ offered for his dental issues, including temporary fillings for his cavities, and an extraction of the cracked tooth. (Id. ¶¶ 102, 104, 106.)

Dr. Zaleski purportedly asked Genco whether he was going to be transferred to the New York State Department of Corrections, explaining that the state prison would provide treatments that WCJ would not. (Id. ¶ 105.) Genco alleges that WCJ refuses to perform certain of these procedures to save money and to shift costs to the state prison. (Id. ¶ 107.)

### C. Jeffrey DeLossantos

DeLossantos also claims that he suffered cavities after being denied dental floss. (Id. ¶ 140.) In addition, he alleges that he experienced severe pain from a cracked tooth, which then became infected. (Id. ¶¶ 132.) Defendant Zeleski examined him and told him that the treatments needed to save the tooth, a root canal and a crown, were not available at WCJ. (Id. ¶ 133.) Zeleski purportedly also said that DeLossantos' teeth were being destroyed by the drilling required for temporary fillings. (Id. ¶ 134.) Although DeLossantos sought to be referred to a

5

provider who could perform the procedures needed to save his tooth, such request was denied and he was told to wait until he was transferred "up-state." (Id. ¶ 136.) DeLossantos ultimately had the tooth extracted because he was told that the pain would persist if it was not removed. (Id. ¶¶ 137-38.)

## D. Plaintiffs Gerald Charles, Gerard Charles and Shawn Thomas

The remaining Plaintiffs similarly allege that they suffered from cavities because they were denied dental floss, and that they were denied permanent fillings for those cavities. (Id. ¶¶ 110, 143.) The SAC does not contain any specific allegations regarding Gerard Charles and Shawn Thomas. Gerald Charles alleges that he was examined by Dr. Zaleski in April 2012. Dr. Zaleski advised him that he had new cavities but that he would have to wait until he was in federal prison to receive a root canal and crown. In lieu of that procedure, Charles was offered an extraction. (Id. ¶ 110.)

## II. Procedural History

The procedural history of this action is long and complex. In September 2012, Plaintiffs Santiago Gomez, Frank Genco, Gerald Charles, Gerard Charles, Pedro Llerandez, Paul Caldwell, Shawn Thomas, Antoine Walker, Jeffrey DeLossantos, Steven Lewis, and Luis Diaz filed the original Complaint. On December 6, 2012, Diaz filed a notice of voluntary dismissal. (Dkt. 25, 36.) The remaining Plaintiffs filed the First Amended Complaint ("FAC") on December 19, 2012. (Dkt. 28.) In the spring of 2013, Defendants Correct Care Solutions LLC, Dr. Skinner, and Dr. Zaleski, and Defendants Cheverko and Westchester moved to dismiss the FAC. (Dkt. 51, 58.)

On March 20, 2014, the Court granted Plaintiff Gomez's request to amend the Complaint a second time and denied the motions to dismiss the FAC as moot. (Dkt. 96.) The Court's Order

6

instructed the other Plaintiffs to sign the Complaint, complete an attached declaration, or otherwise notify the Court whether they intended to rely on the SAC or proceed on the FAC instead, or otherwise risk dismissal for failure to prosecute. Plaintiffs Genco and DeLossantos filed declarations indicating their intention to rely on the SAC but no other Plaintiff responded to the Order. (Dkt. 98, 99.) Plaintiff Gomez then filed the SAC on April 3, 2014. (Dkt. 102).

On April 25, 2014, after failing to file changes of address or otherwise communicate with the Court regarding the prosecution of this action, Plaintiffs Llerandez, Caldwell, Walker, and Lewis were dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). (Dkt. 112.)[6] The Court again ordered the remaining Plaintiffs (Gerard Charles, Gerald Charles, DeLossantos, Thomas and Genco) to inform the Court whether they sought to rely on the newly filed SAC. (Dkt. 114.) In response, each remaining Plaintiff submitted a letter stating his intent to rely on Gomez's SAC. (Dkt. 115-120.)

In June 2014, the Correct Care Defendants and County Defendants filed the instant motions to dismiss the SAC. (Dkt. 123, 129.) Gomez filed an opposition to each motion. (Dkt. 137, 138.) On July 17, 2014, the Court directed the other remaining Plaintiffs to inform the Court whether they sought to rely on Gomez's papers and, to the extent they wished to introduce evidence of exhaustion, to file any such submission by August 7, 2014. (Dkt. 136.) Defendants Genco and Thomas filed letters indicating that they sought to rely on Gomez's opposition, but did not submit evidence of exhaustion. (Dkt. 139, 140.) Plaintiffs DeLossantos and Gerald and Gerard Thomas did not respond to the Court's Order.[7]

---

[6] Since that date, the Court has not received any correspondence from these individuals, or other indication that they seek to participate in this action.

[7] Mail has since been returned as undeliverable to Plaintiffs Genco and Gerald Charles. (Dkt. entries dated September 12, 2015 and September 15, 2015.) They have not submitted updated contact information to the Court.

7

## DISCUSSION

The SAC contains two counts, both alleging deliberate indifference: Count I against WCJ, CCS, and NYCCS, and Count II against all Defendants. The Correct Care Defendants and County Defendants move to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). The Correct Care Defendants argue that Plaintiffs fail to state a claim for deliberate indifference or for municipal liability. (Memorandum of Law in Support of Correct Care Defendants' Motion to Dismiss ("CC Def. Mem.") at 6, 8, 16.) The County Defendants similarly argue that Plaintiffs fail to state a claim for relief; in addition, they assert that Plaintiffs failed to exhaust their administrative remedies and that any claims for injunctive relief are moot. (Memorandum of Law in Support of County Defendants' Motion to Dismiss ("County Def. Mem.") at 5, 7, 8, 15.)

### I. Exhaustion

Because exhaustion is potentially dispositive of Plaintiffs' claims, the Court begins its analysis there. The County Defendants argue that the bulk of Plaintiffs' claims were not exhausted and must be dismissed. Specifically, they argue that only Defendants Gomez and former Plaintiff Caldwell filed any grievance with WCJ prior to filing this action.

#### A. Exhaustion Under the PLRA

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*

§ 1997(e)(a) (emphasis added). This exhaustion requirement applies to all inmate suits regarding prison life and conditions, "whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012). The Supreme Court has interpreted the PLRA's exhaustion provision to require "proper exhaustion," which means "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Porzo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). The applicable procedural rules are thus defined not by the PLRA, but by the prison grievance process itself. See Johnson, 680 F.3d at 238.

"'[F]ailure to exhaust is an affirmative defense'" and "'inmates are not required to specially plead or demonstrate exhaustion in their complaints.'" Grullon v. City of New Haven, 720 F.3d 133, 141 (2d Cir. 2013) (quoting Jones v. Block, 549 U.S. 199, 216 (2007)). See also Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004); Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999)). When a defendant raises non-exhaustion as an affirmative defense, however, as Defendants do here, the plaintiffs must demonstrate exhaustion or show why "special circumstances" excuse their failure to exhaust. See Giano, 380 F.3d at 675. In the event that a complaint contains both exhausted and non-exhausted claims, the PLRA does not require dismissal of the entire action, but only of the unexhausted claims. Jones, 549 U.S. at 223-24.

### B. Conversion to Summary Judgment Motion

The Court may dismiss a complaint under Rule 12(b)(6) for failure to exhaust if non-exhaustion is clear from the face of the complaint. See Kasiem v. Swift, 756 F.Supp.2d 570, 574 (S.D.N.Y. 2010). Where non-exhaustion is not clear from the face of the complaint, however, the court may convert the motion to one for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances,

9

excused." <u>McCoy v. Goord</u>, 255 F.Supp.2d 233, 251 (S.D.N.Y. 2003).  In such a case, the opposing party must be given proper notice of the conversion, and the opportunity to present supporting evidence of exhaustion.  <u>Id.</u> (noting that notice is "especially important" when the plaintiff is *pro se*).

The County Defendants do not assert that non-exhaustion is clear from the face of the SAC; rather, they rely on evidence submitted in conjunction with their motion.  The County Defendants satisfied the notice requirement by informing Plaintiffs in writing that they were submitting written materials in support of their motion to dismiss, and that, as a result, the Court could convert the motion to one for summary judgment under Federal Rule 56.  (Dkt. 132.)  This notice gave Plaintiffs the opportunity to contest the County Defendants' assertion of non-exhaustion with sworn affidavits and other evidence.  <u>See</u> <u>Hernandez v. Coffey</u>, 582 F.3d 303, 308 n.2 (2d Cir. 2009); <u>Fuentes v. Furco</u>, No. 13 Civ. 6846 (AJN), 2014 WL 4792110, at *2 (S.D.N.Y. Sept. 25, 2014).[8]  In addition, the Court's July 17, 2014 Order explicitly directed each Plaintiff to submit any evidence of exhaustion that they wished the Court to consider.  (Dkt. 136.)  The Court will thus treat this aspect of the County Defendants' motion as one for summary judgment, and grant summary judgment if the County Defendants have shown "that there is no genuine dispute as to any material fact and that [they are] entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

---

[8] Gomez argues in his opposition brief that because Defendants did not "move" for summary judgment, the Court cannot rely on the evidence the County Defendants submitted.  (Pl. Opp. to Motions to Dismiss ("Pl. Joint Opp.") (Dkt. 138) at 26.)  Gomez, however, does not dispute receiving notice from Defendants and he submitted copies of his grievances and grievance appeals as exhibits to his opposition. (Pl. Joint Opp. Ex. A – F.)

10

## C. WCJ's Grievance Procedure

Looking to the applicable agency rules in this case, "proper exhaustion" requires compliance with WCJ's grievance procedures, which are set forth in the Westchester County Department of Corrections ("WCDOC") Inmate Rules and Regulations, and reviewed annually by the New York State Commission on Correction ("NYSCOS"). (Watkins Aff. ¶¶ 3-4.) Copies of these rules are distributed to all inmates at WCJ when they are processed into WCDOC; accordingly, each named Plaintiff received and signed for a copy at the time they arrived and were processed. (Id. ¶ 4.) The rules provide that in order to file a grievance, an inmate must submit a "Grievance Form – Part I" to a WCDOC staff member. (Id. ¶ 7.) Such grievance must be submitted within five calendar days of the incident giving rise to the inmate's complaint. (WCDOC Grievance Procedure, County Def. Ex. A at 4.)

## D. Exhaustion by Plaintiffs

### 1. Santiago Gomez

Plaintiff Gomez submitted three grievances relating to the claims he asserts in the SAC: (1) denial of access to dental floss; (2) denial of adequate dental care on November 25, 2012; and (3) denial of adequate dental care on November 26, 2012 and November 29, 2012. (Watkins Aff. Exs. E, F, and G.) The County Defendants acknowledge that each of these grievances were timely filed and appealed, and that Gomez therefore properly exhausted his administrative remedies for the claims described in the grievances, which are virtually identical to their counterparts in the SAC. (County Def. Mem. at 6-7).

Gomez did not, however, file a grievance regarding the allegedly inadequate dental care he received in August 2012 for an exposed cavity. (See SAC 70-75.) The Court agrees with the County Defendants that this allegation was not exhausted, and Gomez does not assert otherwise.

11

Although it appears that the August 2012 incident relates to the same lost filling that was the cause of Gomez's subsequent infection in November 2012 (and the basis for his November grievances), Gomez did not grieve the August 2012 incident at any point. The only grievance Gomez filed in August 2012 pertained to the denial of access to dental floss. (See County Def. E.) In his November 25, 2012 grievance, which described the onset of "severe pain" that same day, Gomez explained that one of his permanent fillings fell out "several weeks" before, that he refused to extract the affected tooth at the time, and that he had experienced "on/off pain" since then. (County Def. Ex. F.) He did not provide the names of the dental providers he saw "several weeks" before or the dates he received treatment, nor did he claim that he had complained to any prison staff member regarding this pain at any point prior to November 25, 2012.[9] Similarly, Gomez's November 29, 2012 grievance did not mention any prior complaints and referred only to the four day period before he filed the grievance. (County Def. Ex. G.)

Moreover, although Gomez's opposition refutes the County Defendants' characterization of his efforts to obtain medical care on November 25, 2012 and to grieve the same, he does not challenge the County Defendants' assertion that he failed to properly exhaust his claim regarding the August 2012 incident, or argue that the August and November incidents constituted a single violation; in fact, he does not mention the August 2012 incident in his opposition at all. (Pl. Aff. in Support of Opp. to County Def. Motion to Dismiss ("Pl. Aff.") at 2-3.) The Court thus concludes that although Gomez exhausted other dental care claims, including his November claim regarding pain from an exposed cavity, he failed to exhaust any claim regarding dental care he received in August 2012, and is thus barred from asserting it here. See Jones, 549 U.S. at

---

[9] The SAC also lacks any allegations regarding dental care Gomez received "several weeks" before November 25, 2012.

12

223-24 (noting that exhaustion should be examined on a claim-by-claim basis).[10]  In any event, as discussed below, the inclusion of the August 2012 allegations would not change the Court's conclusion regarding his deliberate indifference claim as a whole.

### 2.  Remaining Plaintiffs

The record before the Court further establishes that the remaining Plaintiffs failed to properly exhaust their claims.  The County Defendants submitted a sworn affidavit stating that no other Plaintiff filed a dental care grievance, even though the grievance program was available to them.  (Watkins Aff. ¶¶ 9-14).[11]  Plaintiffs have not submitted any evidence to oppose this statement, despite having received the County Defendants Rule 56 notice as well as the Court's Order that any evidence of exhaustion be submitted by August 7, 2014. (Dkt. 131, 136.)  In fact, other than Gomez, only Plaintiff Genco provided any substantive response to the County Defendant's motion.  Genco submitted a letter to the Court affirming that he wrote to WCJ Warden Orlando in August 2012 regarding his dental care complaints, but that the Warden did not respond.  (Genco Letter (Dkt. 139) at 1-2.)  Genco did not, however, indicate that he filed a grievance or that special circumstances excused his failure to do so.  Genco does not, for instance, claim that he was unaware of WCJ grievance procedures or that Defendants prevented him from filing a grievance.  Indeed, Defendants' affidavit indicates that Genco filed two grievances in August 2012 related to back pain.  There is thus no evidentiary basis to conclude

---

[10] C.f. Johnson, 680 F.3d at 238-39 (holding that proper exhaustion of claim may be based on a previously filed grievance identifying "a specific and continuing complaint" where the later occurring events concerned the same legal issue).  Unlike in Johnson, Gomez did not submit any grievances regarding his "severe pain" before November 2012, and his November 2012 grievances did not describe a "continuing complaint" for which Defendants had prior notice.

[11] Former Plaintiff Caldwell submitted a dental care-related grievance on August 23, 2012 (SAC ¶ 9), but he was dismissed by the Court for failure to prosecute in April 2014 (Dkt. 112).

that Genco properly exhausted, or was excused from exhausting, his dental care claims. See Giano, 380 F.3d at 675.

Consequently, the only properly exhausted claims in the SAC are Gomez's allegations regarding the denial of dental floss, and the denial of adequate dental care from November 25, 2012 to November 29, 2012. The claims of the remaining Plaintiffs (Genco, Gerald Charles, Gerard Charles, DeLossantos, and Thomas) are dismissed for failure to exhaust.

## II. Failure to State a Claim

Both sets of Defendants also challenge the sufficiency of Gomez's allegations in the SAC. In reviewing Defendants' motions to dismiss for failure to state a claim, the Court accepts as true all of the factual allegations in the SAC. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). Plaintiffs have the "responsibility to set forth in the complaint facts that state a claim that is plausible on its face." Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). With *pro se* complaints, however, the Court has a duty to construe the complaints liberally and examine the allegations with "special solicitude," interpreting the complaint to "raise the strongest claims that it suggests." Id. (internal quotations omitted).

### A. Count 1 – § 1983 Deliberate Indifference to Medical Need by Defendants Westchester County, Cheverko, CCS, NYCCS, Skinner, and Zaleski

Applying the foregoing standards, the Court concludes that Gomez has not sufficiently alleged a claim for relief under § 1983. To set forth a claim of deliberate indifference to medical need, a plaintiff must show (1) that "the alleged deprivation [was] sufficiently serious, in the

14

sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exist[ed]," and (2) that the official acted with a "sufficiently culpable state of mind." Hill, 657 F.3d at 122 (internal citations and quotations omitted); see also, Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (holding that the same standard applies to claims by convicted prisoners under Eighth Amendment and pretrial detainees' claims under the Fourteenth Amendment).

Gomez alleges, in sum, that Defendants provided inadequate dental care because, after first complaining of pain on November 25, 2012, he was not seen by Dr. Skinner for four days, and because Defendants offered only to provide him with a temporary filling and/or an extraction—not the root canal and crown procedure he favored. Although the Court sympathizes with Gomez's desire to keep his tooth, he has not plausibly alleged that Defendants acted with deliberate indifference to his medical needs.

### 1. Serious Medical Need

Defendants argue that the alleged deprivations of care in the SAC are not sufficiently serious to meet the first prong of a deliberate indifference claim. (County Def. Mem. at 9-10; CC Def. Mem at 9.) This inquiry is fact-specific; in cases in which the alleged deprivation is the inadequacy of the treatment provided, the inquiry looks to the treatment given as well as the plaintiff's underlying medical condition. See Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006); Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003). For the purpose of evaluating the alleged violation, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract" that is relevant. Smith, 316 F.3d at 186.

Gomez's allegations regarding his inability to obtain dental floss while incarcerated do not establish a sufficiently serious medical need. Gomez generally alleges that the denial of

15

dental floss caused him to develop cavities. (SAC ¶ 68.)  "Ordinarily, a tooth cavity is not a serious medical condition, but that is at least in part because a cavity is so easily treatable." Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000).  Accordingly, "absent intense pain or other exigency, the treatment of a cavity (in or out of prison) can safely be delayed by the dentist's schedule or the patient's dread or neglect, can be subject to triage or the management of care, can be mitigated or repaired temporarily, and can be coordinated with other related conditions that need to be treated together." Id.  Although not a significant injury, however, "a tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction." Id.  Based on these "increasingly serious implications," the Second Circuit has established that a *neglected* cavity presents a "serious medical need." Id.

The deprivation of dental floss, by contrast, is simply not so "repugnant to the conscience" or "incompatible with the evolving standards of decency" that it satisfies the seriousness prong of a deliberate indifference claim. Santos v. Nicholls, No. 10 Civ. 3159 (JPO), 2013 WL 3305336, at *5 (S.D.N.Y. July 1, 2013) (quoting Estelle v. Gamble, 429 U.S. 97, 102, 105 (1976)), appeal dismissed (Oct. 28, 2013).  Gomez's cavities—even if they did result from the lack of dental floss—thus fall short of the "sufficiently serious medical need" recognized in Harris. See 219 F.3d at 137.

Gomez's oral infection, however, presents a more serious medical need.  Gomez alleges that he suffered severe pain resulting from an oral infection in November 2012, several months after he lost a filling on the upper right side of his mouth and refused to have the tooth

extracted.[12]   Gomez complained about the pain to the C.O.s on duty on November 25, 2012 and again on November 26, 2012.  (SAC ¶¶ 76-77, 84, 88.)  Around this time, he was seen by an unidentified nurse practitioner who told him he was "ok" and that she would give him Motrin for the pain.  (Id. ¶ 85.)  That night, he received pain medication.  (Id. ¶ 87.)  On November 29, 2012, Gomez awoke to a mouth full of fluid and blood, and informed the attendant C.O.  (Id. ¶ 91.)  Four hours later he was seen by Dr. Skinner, who diagnosed him with an oral infection and prescribed antibiotics.  (Id. ¶ 92.)  Some time in December, Dr. Skinner administered several Novocain injections to further treat the pain and, subsequently, extracted the affected tooth.  (Id. ¶ 92.)  Gomez challenges both the timing and adequacy of the treatment he received.

Gomez's oral infection and accompanying symptoms were sufficiently serious to satisfy the first prong of his deliberate indifference claim.  Accepting his allegations as true, although the cavity and lost filling were not initially cause for concern, by November 2012, the cavity had developed into an infection carrying a substantial risk of harm.  Gomez alleges that over the next few days his condition worsened, and by the time Dr. Skinner examined him, the infection was "dangerous."  (SAC ¶ 93.)  Thus, while Gomez's original injury was not sufficiently serious to give rise to a constitutional claim, and he may have prevented the infection had he consented to an extraction earlier, Defendants were nonetheless bound to treat the infection once it developed. The law is clear that "the failure to provide treatment for an otherwise insignificant wound may violate [plaintiff's constitutional rights] if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment."  Smith, 316 F.3d at 186; accord Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Gomez's contentions

---

[12] As discussed above, although Gomez did not grieve the denial of his preferred treatment in August 2012, he did exhaust his claims related to the treatment of his pain and infection in November 2012.  These November-based allegations are thus properly before the Court.

regarding the treatment for his November 2012 oral infection thus plausibly allege a serious medical need.

### 2. Deliberate Indifference

To meet the second prong of a deliberate indifference claim, Plaintiff must sufficiently allege that Defendants "'kn[ew] of and disregard[ed] an excessive risk to [Gomez's] health or safety' and that [they were] 'both ... aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference.'" Caiozzo, 581 F.3d at 72 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). In the context of a dental care claim, both "(1) outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated and (2) imposition of a seriously unreasonable condition on such treatment, . . . constitute deliberate indifference on the part of prison officials." Harrison, 219 F.3d at 138.

Mere negligence or malpractice is insufficient to satisfy this prong unless it "involves culpable recklessness, *i.e.*, an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." Hernandez v. Corizone Medical Dep't Staff, No. 14 Civ. 192 (JPO), 2015 WL 273690, at *2 (S.D.N.Y. Jan. 22, 2015) (quoting Chance, 143 F.3d at 703). Moreover, "it has long been the rule that a prisoner does not have the right to choose his medical treatment, as long as he receives adequate treatment." Hill, 657 F.3d at 123 (citing Estelle, 429 U.S. at 106-07). Accordingly, the "essential test is one of medical necessity and not one simply of desirability." Id. (citing Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)).

Gomez argues that Defendants "delay[ed] required treatment" in order to shift costs to the prison facilities where the WCJ inmates would permanently reside. (Pl. Joint Opp. at 25.) To the extent that Gomez is premising his deliberate indifference claim on the August 2012

18

denial of his request to be treated by an outside dental provider for a root canal and crown, as noted above, that claim was not exhausted and cannot be asserted here. Even if such allegation was properly before the Court, however, it is nonetheless insufficient to state a claim for deliberate indifference.

Defendants did not disregard Gomez's complaint in August 2012; indeed, he specifically alleges that Dr. Zaleski offered to start the first stage of root canal but that because she would not be able to complete that process, extraction was the best option for avoiding pain—a treatment option Gomez refused. (SAC ¶¶ 71, 72, 75.) Such alleged conduct does not rise to the level of deliberate indifference. See Evering v. Rielly, No. 98 Civ. 6718 (DAB), 2001 WL 1150318, at *10 (S.D.N.Y. Sept. 28, 2001) ("an inmate's refusal to accept medical treatment in no way signifies a deliberate indifference to serious medical needs"). Although extraction of his tooth was understandably "not Plaintiff's ideal solution, this procedure would have been adequate to solve Plaintiff's [cavity] problems." O'Connor v. McArdle, No. 04 Civ. 314, 2006 WL 436091, at *7 (N.D.N.Y. Feb. 22, 2006), aff'd, 217 F. App'x 81 (2d Cir. 2007). It is well-established that the state is not compelled to provide "a model system of dental care beyond average needs," but rather, is only required to "provide the minimum level of [dental] care required by the Constitution." Dean, 804 F.2d at 215 (internal quotations and citation omitted).

Defendants' alleged treatment of Gomez in November—a claim he *has* exhausted—also fails to plausibly state deliberate indifference. Although he was not immediately seen by a dentist after first complaining of pain on November 25, Gomez was examined the next day by a nurse practitioner who offered him Motrin, and he received pain medication that night. (SAC ¶¶ 76, 82, 85, 87.) The four-day delay before he was seen by Dr. Skinner on November 29 is thus "far afield from cases describing outright denials of care or outrageous waits across a period of

19

many months for dental care." <u>Santos v. Nicholls</u>, 2013 WL 3305336, at *5 (dismissing claim where plaintiff waited seven days to see dentist). At most, such a delay evinces negligence, but not a conscious disregard of Gomez's health. <u>See id.</u>; <u>see also Harrison</u>, 219 F.3d at 139 (a physician who "delay[s] . . . treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady" does not act with requisite state of mind).

Moreover, in contrast to cases in which plaintiffs have sufficiently alleged deliberate indifference, Gomez has not alleged any facts indicating that the course of treatment offered by Dr. Skinner was unreasonable or ineffective, or that it was motivated by improper incentives. <u>C.f. Harrison</u>, 219 F.3d at 137-38 (plaintiff plausibly alleged deliberate indifference based on the defendants' refusal to treat an infected tooth if he did not consent to removal of another tooth); <u>Chance</u>, 143 F.3d at 700-01, 704 (plaintiff stated claim for relief by alleging that his treating oral surgeon and dentist advocated extraction so they could collect extra pay, even though other dentists recommended less invasive procedures).[13] Here, Defendants did not refuse to treat Gomez unless he consented to an extraction; rather, they continued to treat his symptoms. <u>See Harrison</u>, 219 F.3d at 137.[14] Indeed, Gomez admits that he was given both pain medication before he saw Dr. Skinner, and Novocain injections to treat his pain afterwards, as well as

---

[13] Although Gomez generally alleges that WCJ was "cheap" and wanted to shift costs to the state prisons, he does not appear to allege that his pain or infection was not treated at all as a result, but rather that that is the reason he was denied his treatment of choice, namely to be taken to an outside dental provider for a root canal and crown. (<u>See, e.g.</u>, SAC ¶¶ 71, 72, 74, 96, 97.)

[14] In further contrast to <u>Harrison</u>, the tooth that was ultimately extracted was the source of Gomez's infection and pain and he has not alleged any preexisting conditions that would otherwise caution against the procedure, *i.e.*, that he had "few teeth to spare." 219 F.3d at 137.

antibiotics to treat his infection.  (SAC ¶¶ 85, 87, 93, 95.)  In addition, Gomez does not allege that the extraction to which he ultimately consented failed to alleviate his pain or was otherwise ineffective.

For these reasons, while the Court is sympathetic to the pain Gomez endured, as well as his desire for a permanent filling and crown, it cannot conclude that he states a deliberate indifference claim because the care he alleges he has received was sufficient to address his medical needs.  "The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves," but only that they receive the treatment that is medically necessary.  Dean, 804 F.2d at 215 (internal citation and quotations omitted); see also O'Connor, 217 F. App'x at 83; Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (dismissing Eighth Amendment claim where plaintiff did not allege a denial of medically necessary treatment).  Count II of the SAC is therefore dismissed.[15]

## B.  Count 1- **Monell** Claim

The SAC also asserts a claim for municipal liability under § 1983 against Westchester County, CCS, and NYCCS.  "A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."   Connick v. Thompson, 131 S.Ct 1350, 1359 (2011).  This is because municipalities "are responsible only for their *own* illegal acts"; they cannot be held "vicariously liable under § 1983 for their employees' actions."  Id. (internal quotations omitted).  Thus, to state a constitutional claim for relief against the City, or any other

---

[15] Because the Court finds that Gomez has not plausibly alleged deliberate indifference as to any Defendant, an individualized evaluation of personal involvement is not necessary.  The Court notes, however, that the SAC does not directly connect any Defendant other than Dr. Skinner to the treatment of Gomez's oral infection in November 2012.

municipal body, a plaintiff must allege that his constitutional injury occurred as a result of an "official municipal policy." Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011). Official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S.Ct. at 1354 (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691 (1978)).

Here, Gomez has failed to plausibly allege a deprivation of a constitutional right—caused by a municipal policy or otherwise. Because he cannot state a claim for relief against the City, Count I of the SAC is also dismissed.

## CONCLUSION

For the foregoing reasons, the Court concludes that (1) Plaintiffs Genco, Gerald Charles, Gerard Charles, DeLossantos, and Thomas have failed to exhaust their claims through WCJ's administrative grievance procedures, and summary judgment pursuant to Federal Rule 56 is therefore appropriate as to their claims, and (2) Plaintiff Gomez has failed to state a deliberate indifference claim against any of the Defendants pursuant to Federal Rule 12(b)(6). The SAC is thus dismissed in its entirety. The Clerk of the Court is respectfully directed to close items 123 and 129 on the docket and to close the case.

SO ORDERED.

Dated:     March 10, 2015
           New York, New York

Ronnie Abrams
United States District Judge

22